WENTWORTH, Judge.
Employer/carrier seek review of a workers’ compensation order by which they are required to provide claimant with a cardiac catheterization procedure in order to determine whether claimant’s heart attack was causally related to his employment. We affirm, finding that in this controverted claim the judge did not err as a matter of law in ordering the test in advance of a finding or stipulation that a compensable injury had occurred.
The 58 year old claimant was employed as a roofer for 30 years, having worked for the present employer for approximately one year at the time of the alleged accident. Claimant testified that as he was spreading gravel on a roof he began to feel weak, broke into a cold sweat, and began to lose his balance. He got off the roof, climbed into his truck and slumped over the wheel. Claimant testified that his heart was racing, he felt pain in his chest, he was shaking, there were pains in his right arm, and he was experiencing shortness of breath. This had never happened to claimant before, and after sitting for an hour he drove back to the employer’s shop. He rested at home and then unsuccessfully attempted a one-time return to work. Claimant currently has episodic shortness of breath and takes medication.
The several physicians who treated claimant after his accident came to the conclusion that without further diagnostic tests they could not conclusively determine whether claimant had sustained a heart attack, or whether there was a causal relationship between any injury which he sustained and his employment. Specifically, two physicians agreed that claimant needed to have a cardiac catheterization procedure done in order to allow them to make a complete diagnosis, as necessary to determine the possible compensability of the injury. Although the catheterization may be helpful to the doctors by more precisely identifying claimant’s condition for treatment, there is no indication that this procedure would presently be indispensable but for the need to resolve the issue of causation in order to determine compensability.
The judge found that “claimant’s onset of symptoms commenced while he was doing roofing work for the employer herein. Said symptoms may be caused by an industrial accident, however the actual diagnosis of the claimant’s medical condition and the *26 precise causal etiology of claimant’s symptoms cannot be ascertained without said cardiac catheterization.” The judge concluded that because the recommended procedure was necessary to determine the cause of claimant’s symptoms, and the fact that those symptoms might be related to a compensable accident, employer/carrier should therefore be required to incur the costs of providing the test.
Employer/carrier contend, essentially, that the award of diagnostic tests must follow, rather than precede, a finding of compensability of some injury. Compensa-bility of the cost for diagnostic tests and surgery cannot be denied upon an after-the-fact determination of lack of industrial causation, under well established Florida law. Barris v. Toppers of Florida, Inc., 382 So.2d 441, 442 (Fla. 1st DCA 1980). It is the purpose of the diagnosis, as opposed to the ultimate causal relationship of the symptom, that determines whether or not the medical expenses necessary to make the diagnosis are compensable. In Nealy v. City of West Palm Beach, 491 So.2d 585 (Fla. 1st DCA 1986), this court stated: “Whenever the purpose of the diagnostic test is to determine the cause of a claimant’s symptoms, which symptoms may be related to a compensable accident, the cost of the diagnostic test is compensable.”
Employer/carrier correctly note that the cited cases did not involve, as this one does, the absence of a prior determination or stipulation that a compensable accident had occurred. The order does, however, determine predicate employment facts for the claim, i.e. “the claimant was carrying a heavy load of gravel in hot weather, inhaled smoke from the hot tar and began feeling weak, had chest pain, felt short of breath, and may [have] sustained a heart attack.” It also references evidence of continuing symptoms as to which the un-controverted testimony of the treating physician is: “I cannot make a statement as to what caused the heart condition until I find out just what that heart condition is. And ... that can best be determined at this time by a cardiac catheterization.”
We conclude that these circumstances are within the essential rationale of the cited decisions, supra, awarding medical costs for diagnosis of symptoms which may or may not be causally related to a known compensable accident. Here the temporarily disabling events found by the judge to have occurred during covered employment may or may not have caused an internal failure “accident” within the requisite standards for compensability. The medical costs necessary to resolve that issue appear to us to be indistinguishable from those previously awarded in this jurisdiction, and within the language of section 440.13, (1) and (2), Florida Statutes, providing for medically necessary care “as the nature of the injury ... may require,” including “any service ... used to identify ... an illness or injury which is appropriate to the patient’s diagnosis.” The diagnosis here cannot, of course, be made finally or completely without the claimed service. But the evidence fully supports the apparent conclusion below that claimant adequately established an interim diagnosis which the catheterization may show to be causally related to the events on the date of the claimed “accident.” We find neither logic nor controlling precedent to compel denial of the claim. Cf Section 61.12(h), and 83.20, Larson’s Workmen’s Compensation Law.
Affirmed.
SMITH and WIGGINTON, JJ., concur.